NO. 17-1145

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

ALEXIS DEGIDIO, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED
*Plaintiff-Appellees*

V.

CRAZY HORSE SALOON AND RESTAURANT, INC.,
THEE NEW DOLLHOUSE
*Defendant-Appellant*

On Appeal from the United States District Court
For the District of South Carolina, Florence Division

BRIEF OF APPELLANT

James L. Holt, Jr.   (TN Bar #012123)
Attorney for Appellant
JACKSON, SHIELDS, YEISER & HOLT
262 German Oak Drive
Memphis, TN 38018
901-754-8001 (telephone)
901-754-8524 (facsimile)
*jholt@jsyc.com*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Local Rule 26.1, Crazy Horse Saloon and Restaurant, Inc. submits the following corporate disclosure statement:

Crazy Horse Saloon and Restaurant, Inc. ("Crazy Horse") is a corporation organized under the laws of South Carolina. Crazy Horse is not a publicly held corporation or other publicly held entity. It does not have any parent corporations. There is no parent corporation, publicly held corporation, or other publicly held entity that owns 10% or more of its stock. No publicly held corporation or other publicly held entity has a direct financial interest in the outcome of this litigation. Crazy Horse is not a trade association, and there is no publicly held member whose stock or equity value could be affected substantially by the outcome of this proceeding or whose claims the trade association is pursuing in a representative capacity. This case does not arise out of a bankruptcy proceeding.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT.........................................................i

TABLE OF AUTHORITIES..............................................................iii-iv

JURISDICTIONAL STATEMENT.....................................................1-3

STATEMENT OF THE ISSUES.............................................................4

STANDARD OF REVIEW....................................................................4

STATEMENT OF
CASE/FACTS.......................................................................5-13

      I.      PROCEDURAL HISTORY.............................................5-8

      II.     SUMMARY OF THE FACTS.....................................8-13

SUMMARY OF THE ARGUMENT.................................................14-16

ARGUMENT...................................................................16-29

      I.      THE ARBITRATION AGREEMENTS WERE NOT
           MISLEADING.................................................16-29

      II.    CASELAW DOES NOT SUPPORT THE COURT'S
          DENIAL OF DEFENDANT'S MOTION TO COMPEL
          ARBITRATION TO PREVENT MISLEADING
          COMMUNICATIONS................................................16-29

CONCLUSION....................................................................29

CERTIFICATE OF SERVICE..........................................................30

ADDENDUM (STATUTES AND RULES) ........................................31

CERTIFICATE OF COMPLIANCE................................................40

ii

# TABLE OF AUTHORITIES

## CASES

*Am. Gen. Life v. Wood*, 429 F.3d 83 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 2

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) . . . . . . . . . . . . . . . 2, 29

*Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609 and 10-cv-2671, 2012 WL 760566 (S.D. Ca. Mar. 8, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23-24

*Billingsley v. Citi Trends, Inc.*, 560 F. Appx. 914 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 18-19, 22-24, 28

*Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir. 1998) . . . . 28

*Espinoza v. Galardi South Enterprises, Inc.*, No. 14-21244, 2015 WL 9592535 (S.D. Fla. Dec. 31, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Gulf Oil Co. v. Bernard, 452 U.S. 89* (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hightower v. GMRI, Inc.,* 272 F.3rd 239 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . 29

*Longcrier v. HLA Co., Inc.* 595 F.Supp.2d 1218 (S.D. Ala. 2008) . . . . . . . . . . 27-28

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983) . . 28-29

*Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173 (4th Cir. 2013) . . . . . . . . . . . . . . . 4-5

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) . . . . . . . . . . . . . . . . . 18

*Ross v. Wolf Fire Protection*, 799 F.Supp.2d 518 (D. Md. 2011) . . . . . . . . . . . . 28

*Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 4, 22

*Slavinski v. Columbia Ass'n, Inc.*, No. CCB-8-890, 2011 WL 1310256 (D.Md. Mar. 30, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Stevenson v. Great American Dream, Inc.*, 2014 WL 3519184 (N.D. Ga. 2014) . 28

*Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley*, 683 F.3d 577 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). . . . . . . . . . . . . . . . 2

*Williams v. Securitas Security Services USA, Inc*., No. 10-7181, 2011 WL 2713741, at *3 (E.D. Penn. July 13, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24

## STATUTES AND COURT RULES

Eleventh Circuit Rules 36-2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Eleventh Circuit Rules 36-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.* . . . . . . . . . . . . . . . 1

Federal Arbitration Act, 9 USC §1, *et seq*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 29

Federal Arbitration Act, 9 USC §16(a)(1)(B). . . . . . . . . . . . . .. . . . . . . . . . . . . 1, 8

Federal Question Jurisdiction, 28 USC §1331 . . . . . . . .. . . . . . . . . . . . . . . . . 1

<u>STATEMENT OF SUBJECT-MATTER AND
APPELLATE JURISDICTION[1]</u>

The District Court has subject matter jurisdiction over this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* and federal question jurisdiction pursuant to 28 U.S.C. § 1331.

This Court has appellate jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B) of the Federal Arbitration Act (the "FAA"), which authorizes immediate appeals of district court orders denying motions to compel arbitration "if the order falls within an exception to the final judgment rule established by the FAA." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 (4th Cir. 2012). The order appealed from constitutes an exception to the FAA's final judgment rule if: (1) "the transaction is one that involves interstate commerce to which the FAA applies;" and (2) the motion of the party so appealing "adequately invoke[d] §§ 3 or 4 . . . ." *Id*. at 696-97.

In the instant matter, this Court has appellate jurisdiction over the District Court's denial of Defendant's motion to enforce the arbitration agreements at issue. For instance, the Licensing, Lease, and Dispute Resolution Agreements ("Lease Agreements" or Agreements") meet the first prong of "involv[ing] interstate commerce to which the FAA applies" because the Opt-ins who signed those Agreements to lease entertaining space at the Club seek money damages against the

---

[1] Citations to the J.A. refer to the Joint Appendix filed by the parties in this appeal.

1

Club for claims they contend arise under both the FLSA and state law, including the allegedly improper withholding of certain fees that were partially generated with credit card transactions involving interstate commerce.[2] *Id.* at 697 (having "funds from a foreign source in a transaction is sufficient to implicate the FAA"); *see also Am. Gen. Life v. Wood, 429 F.3d 83, 87* (4th Cir. 2005 (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002) (internal citations omitted) (the transaction that was the subject of the agreement was related to interstate commerce); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Additionally, Defendant's motion to compel arbitration meets the second prong because it has "adequately invoke[d] §§ 3 or 4 . . ." by presenting issues that must "be decided exclusively by an arbitrator and not by any court," which renders "the denial of that motion . . . appealable under § 16." *Rota-McLarty*, 700 F.3d at 698 (internal citations omitted). For instance, in its motion to compel arbitration, Defendant requested that the Court "grant its Motion to Dismiss the claims asserted by those Opt-in Plaintiffs who have signed Arbitration Agreements, and that it compel enforcement of the Arbitration Agreement so that the Opt-In Plaintiffs may assert their claims before an arbitrator, pursuant to the requirements of the Arbitration Agreement they agreed to prior to opting into this civil action."[3]

---

[2] (1st Am. Compl., J.A. at 000012-000017.)

[3] Def.'s Mt. to Dismiss Claims of Opt-ins to Conditionally Certified FLSA Action and to Compel Arbitration (J.A. at 726; "Motion"); Def.'s Brief in Support of Def.'s

Additionally, the Arbitration Agreement itself claimed that it was "governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*" and that "[i]ts purpose is to ensure that an arbitrator, <u>not</u> a court, will decide <u>*ALL*</u> *federal, state, statutory, and common law claims between the Parties . . . ."*[4] Thus, since Defendant has met both prongs of the test, this Court has appellate jurisdiction over the District Court's denial of Defendant's Motion to Dismiss claims of Opt-ins and Compel Arbitration.

The Order denying Defendants' Motion to Dismiss claims of Opt-ins and Compel Arbitration was entered on January 26, 2017.[5] Defendants timely filed a Notice of Appeal on February 1, 2017.[6]

---

Mt. to Dismiss Claims and to Compel Arbitration Against Those Opt-in Plaintiffs Who Signed Mandatory Arb. Agreements ("Arbitration Brief"), J.A. at 0000736.

[4] Arbitration Brief, J.A. at 000730 (citing Arbitration Provision).

[5] (Order, J.A. at 896-931).

[6] (Notice of Appeal as to Order on Mt. to Certify Class, for Misc. Relief, Mt. to Compel, and Mt. to Dismiss, filed with district court, J.A. at 932-934.)

## STATEMENT OF THE ISSUES

I.  Whether the District Court erred in denying Appellants' Motion to Dismiss Claims of Opt-ins and to Compel Arbitration pursuant to the terms of written arbitration agreements signed by nine (9) Opt-ins to the FLSA conditionally certified collective action.

II.  Whether the District Court erred in finding that there were "improper communications between Defendant and the putative class members during litigation" such that those arbitration agreements should be disregarded.

## STATEMENT OF THE STANDARD OF REVIEW

The Fourth Circuit applies a de novo standard of review to a district court's denial of a motion to compel arbitration. *See Muriithi v. Shuttle Exp., Inc*., 712 F.3d 173, 178 (4th Cir. 2013) (citing *Sydnor v. Conseco Fin. Servicing Corp.,* 252 F.3d 302, 304–05 (4th Cir. 2001)). Furthermore, this Circuit "review[s] de novo questions of state contract law concerning the validity of the parties' arbitration agreement" (i.e., "whether an enforceable arbitration agreement exists"). *Id*. (citing *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 699 (4ᵗʰ Cir. 2012).[7]

---

[7] While there are other various standards of review that may be applied to a district court's denial of a motion to compel arbitration, Defendant contends that the de novo standards cited above are applicable in this instance because it is appealing the District Court's determination that the arbitration agreements should not be enforced because they were misleading (and where waiver of the agreements, default, and prejudice are not at issue in this appeal). *See e.g., Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4ᵗʰ Cir. 2012) (if the denial of arbitration is

4

<u>STATEMENT OF THE CASE/FACTS</u>

This Appeal concerns the enforceability of arbitration agreements signed by nine Entertainers who later filed consent forms during the designated opt-in period for conditional certification of a collective action under the FLSA ("Opt-ins").

## I.   PROCEDURAL HISTORY

Plaintiff Alexis Degidio ("Plaintiff") filed this civil action asserting claims against Defendant for alleged minimum wage and overtime pay violations pursuant to the Fair Labor Standards Act ("FLSA") and violations under the South Carolina Payment of Wages Act ("SCPWA") and requesting that those claims be tried by a jury.[8]  Defendant answered denying that Plaintiff was an "employee" (under either the FLSA or SCWPA) or that it had any liability.[9]  On September 30, 2015, this Court issued an Order denying in substantial part Defendant's Motion for Summary Judgment, granting Plaintiff's Motion for Conditional Certification and Judicial

---

due to *waiver*, the standard of review is de novo with deference to underlying factual findings); *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley*, 683 F.3d 577, 586 (4th Cir. 2012) (if the denial of arbitration was based on a legal determination that there was *default* or *prejudice*, then the de novo standard applies; however, a "clearly erroneous" standard applies to factual findings regarding prejudice and deference applies to factual findings regarding default).

Defendant notes that it has found no Fourth Circuit precedent where any district court denied a motion to compel arbitration on the basis that such agreements were "misleading" or any party that appealed such a ruling; however, the de novo standard which the *Muriithi* Court used to determine if an agreement was unconscionable seems to be the closest to the Court's determination that the agreements were unenforceable since they were misleading. 712 F.3d at 178.

[8]  (1st Am. Compl., J.A. at 000012-000017.)

[9]  (Am. Answer, J.A. at 000020-000030.)

5

Notice under the FLSA, and denying Plaintiff's Motion for Class Certification pursuant to Federal Rules of Civil Procedure 23 with leave to refile.[10]   The Court ruled that Plaintiff's state law claims were preempted except for Plaintiff's one claim under the SCPWA for deductions from tips.[11]   Defendant filed its Motion to Dismiss and/or in the Alternative for Summary Judgment on Plaintiff's state law claim for deductions from wages and set forth its undisputed material facts.[12] However, the Court denied the 12(b)(6) Motion to Dismiss, finding Plaintiff had "advanced a plausible basis for relief" and "[a]t this stage, the allegations set forth in the complaint are sufficient to survive a motion to dismiss."[13]   The Court refused to consider or to rule upon Defendant's Motion for Summary Judgment, although Plaintiff did not dispute the material facts Defendant submitted.[14]   However, the Opinion recognized that South Carolina courts had not addressed whether tips could be included within the definition of wages under the SCPWA and that it was an "uncertain[] . . . issue under South Carolina law."[15]

Defendant then filed a Motion to Certify the uncertain question -- whether tips may be considered wages under the SCPWA -- to the South Carolina Supreme

---

[10]  (Order Deciding Def.'s Mt. for Summ. Judg., J.A. 482-83.)

[11]  (Order Deciding Def.'s Mt. for Summ. Judg., J.A. 439-441.)

[12]  (Def.'s Mt. to Dismiss for Fail. to State a Claim and/or for Summ. Judg. on Pl.'s Claim Under State Law for Deductions from Tips ("Mt. to Dismiss & for Summ. Judg."), J.A. at 484-499.)

[13]  (Order Denying Mt. to Dismiss & for Summ. Judg., J.A. at 511.)

[14]  (Order Denying Mt. to Dismiss & for Summ. Judg., J.A. at 502.)

[15]  (Order Denying Mt. to Dismiss & for Summ. Judg., J.A. at 505-06.)

Court.[16]   However, the Court denied the Motion to Certify, ruling that Defendant should have filed the Motion to Certify before the Court ruled on the Motion to Dismiss.[17] On August 11, 2016, Defendant filed a Motion to Certify Uncertain Questions of State Law Raised in Defendant's Motion for Summary Judgment, which had not yet been ruled upon.[18]   Defendant sought a ruling from the South Carolina Supreme Court on some additional uncertain questions under the SCPWA *before* the Court ruled on whether Defendant was entitled to Summary Judgment on Plaintiff's SCPWA claim, since it had been established that the facts presented in that Motion were not in dispute and uncertain legal questions remained.[19]

On October 31, 2016, Defendant filed its Motion to Dismiss Claims and to Compel Arbitration Against Those Opt-in Plaintiffs Who Had Signed Mandatory Arbitration Agreements.[20] Defendant contended that nine Entertainers who are Opt-ins to Plaintiff's conditionally certified FLSA action signed agreements to arbitrate any and all disputes with Defendant and that such agreements should be enforced instead of permitting those Opt-ins to join a lawsuit for any claims related

---

[16] Def.'s Mt. to Alter or Amend Order dated June 3, 2016 and Certify South Carolina Payment of Wages Act Question(s) to S.C. Supreme Court (ECF No. 133).
[17] (Order (ECF No. 140) at 5.)
[18] Def.'s Mt. to Certify Uncertain Question(s) of State Law Raised in Def.'s Motion for Summary Judgment to S.C. Supreme Court (ECF No. 146).
[19] *See id*. at 1-2.
[20] (Def.'s Mt. to Dismiss Claims and to Compel Arbitration Against Those Opt-in Pls. Who Signed Mandatory Arb. Agreements and Brief, J.A. 000726-847.)

to their entertaining at Defendant's Club.[21]

On January 26, 2017, the Court denied Defendant's Motion to Dismiss the Claims of Opt-Ins and Compel Arbitration, which is the subject of this appeal. In that same Order, the Court also denied Defendant's Motion to certify the additional uncertain questions related to the South Carolina law but granted Plaintiff's Motion to Certify a Class on the state law claim.[22] On February 1, 2017, Defendant timely filed its Notice of Appeal of the Order denying its Motion to Compel Arbitration, pursuant to 9 U.S.C. §16(a)(1)(B).[23]

## II. SUMMARY OF FACTS

Plaintiff was an Entertainer who occasionally performed at Defendant's upscale Gentleman's Club from about July 2012 to April 2013 and performed at various Adult Entertainment Clubs in South Carolina and other states from about 2004 to the spring of 2013.[24] Plaintiff, like other Entertainers, was not considered to be an employee of Defendant but was permitted to entertain there as an independent contractor.[25]

Although Plaintiff, while appearing as an Entertainer, was never paid by Defendant and understood at the time that she was an independent contractor, her

---

[21] (Arbitration Brief, J.A. 000728-736.)
[22] (Order, J.A. at 930.)
[23] (Notice of Appeal, filed with District Court on February 1, 2017, J.A. 932-34.)
[24] (Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 514; Refiled Memo. in Supp. of Mt. for Summ. Judg. ("Def.'s Refiled Summ. Judg. Memo."), J.A. at 112, 114.)
[25] (Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 000514; Def.'s Refiled Summ. Judg. Memo., J.A. at 000114.)

lawsuit claims Defendant exercised a significant degree of control over her such that she meets the definition of an employee under the FLSA and the SCPWA.[26] However, Defendant provided evidence that disputed that Plaintiff or any other Entertainer was ever subjected to the degree of control alleged by Plaintiff or otherwise treated as employees under any definition.[27] For instance, Plaintiff Degidio was not paid wages by the Club but received earnings directly from customers through fees she set and charged (plus whatever tips she received).[28] Further, Plaintiff Degidio was not subject to Defendant's control in that the Club did not set her schedule, control how she danced or performed, restrict her to perform solely for Defendant's Club, or control her costumes or style of dress.[29]

Although the Court denied Defendant's summary judgment motion on that

---

[26] (Am. Compl., J.A. at 000013-15, 000023, 000027.)

[27] (Def.'s Refiled Summ. Judg. Memo., J.A. at 105-108.) Plaintiff Degidio was not paid wages by the Club; her earnings came directly from customers by way of fees set and charged by Plaintiff plus whatever tips she received. *See id.* at 000109; Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 000514; Def.'s Stat. of Undisp. Facts, J.A. at 136-138. Plaintiff did not work according to a schedule but was free to entertain whenever she wished at Defendant's Club or to perform other places as well. (Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 000514-515; Refiled Summ. Judg. Memo., J.A. at 000105; Def.'s Stat. of Undisp. Facts, J.A. at 136-138.) The Club did not control Plaintiff as to when or how she performed, or for whom she danced. (Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 000515; Refiled Summ. Judg. Memo., J.A. at 000106-107; Stat. of Facts, J.A. 000136-137.) Plaintiff (like other Entertainers) was responsible for determining her own dresses, make-up, and style of dancing. (Resp. to Pl.'s Mt. to Certify Class, J.A. at 000515; Def.'s Refiled Summ. Judg. Memo., J.A. at 000106; Stat. of Facts, J.A. 137-138.)

[28] (Def.'s Refiled Summ. Judg. Memo., J.A. at 000109; Def.'s Resp. to Pl.'s Mt. to Certify Class, J.A. at 000514; Def.'s Stat. of Undisp. Facts, J.A. at 136-138.)

[29] *See supra*, n. 27.

issue, Plaintiff did not move for summary judgment; therefore, the issue of whether she was an "employee" under the FLSA and/or the SCPWA remains a disputed issue to be tried before a jury.

As of October 31, 2016, nine Entertainers who had performed at the Club since mid-November 2014 had each entered into a Licensing Lease and Dispute Resolution Agreement ("Lease Agreement" or "Agreement") as part of an Entertainers Information Package given to each Entertainer.[30] The Arbitration Provision in the Licensing Lease and Dispute Resolution Agreement specifically applies to "_ALL_ *federal, state, statutory, and common law claims between the Parties, including, but not limited to all claims* . . . that arise out of, in connection with, or relating to this Agreement," *including* the enforcement of the Licensing Agreement, *the "Performer's classification as an independent contractor, and the arbitrability of any such claim, regardless of when it may have arisen, and regardless of whether a lawsuit has been filed seeking a collective or class action* . . . . ."[31]

Each Entertainer who signed an Arbitration Agreement was provided with information about arbitration, Plaintiff's lawsuit, the right to opt out of the

---

[30]  (Arbitration Brief, J.A. at 728-731.)
[31]  Licensing, Lease, and Dispute Resolution Agreements ("Agreements") § 15(d)(i), J.A. at 000741, 000753, 000765, 000777, 000789, 000801, 000814, 000826, 000839) (emphasis added).

10

arbitration provision, and the right to consult an attorney.[32] However, those Opt-ins still filed Consents to Join Plaintiff Degidio's lawsuit against Defendant Crazy Horse after signing those arbitration agreements.

Therefore, on October 31, 2016, Defendant filed its Motion to Dismiss Claims and to Compel Arbitration Against Those Opt-in Plaintiffs Who Had Signed Mandatory Arbitration Agreements and a Brief in support thereof.[33] Therein, Defendant contended that nine of the fourteen Entertainers that opted into Plaintiff's conditionally certified FLSA action had already signed agreements to arbitrate any and all disputes with Defendant and that such arbitration agreements should be enforced instead of permitting those Opt-ins to join a lawsuit for any claims related to their entertaining at Defendant's Club.[34] First, Defendant argued that it had met all the requirements to compel arbitration regarding the disputes of those Opt-ins, including that the written arbitration provisions they signed (but refused to abide by) pertained to a dispute between the parties and were related to interstate commerce.[35] Secondly, the Club indicated that the Entertainers who signed those arbitration provisions did so voluntarily without coercion after being advised of Ms. Degidio's pending lawsuit; were provided with information about arbitration; and received an

---

[32] The Entertainer's Information Package for each of the nine Opt-ins was attached to Defendant's Motion, J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.)

[33] (J.A. 000726-847.)

[34] (Arbitration Brief, J.A. 000728-736.)

[35] (Arbitration Brief, J.A. 000733-735.)

opportunity to fully review the agreements outside of Defendant's presence, to consult their own attorney(s) about such agreements, and to opt-out of arbitration.[36] Lastly, Defendant argued that it had timely asserted its right to enforce the arbitration agreements, such that the Court could not find it had waived its rights to compel arbitration due to delay or prejudice to the other party.[37]

After Plaintiff contended that the arbitration agreements should not be enforced because they were allegedly misleading and the Club delayed in attempting to compel arbitration,[38] Defendant filed a Reply explaining that it had not delayed in bringing its motion to compel arbitration but filed it as soon as practicable after the first party who had signed an arbitration agreement joined this suit.[39] Additionally, Defendant argued that Plaintiff had not met her burden to establish that it engaged in

---

[36] (Arb. Brief, J.A. 000729-731; Def.'s Reply to Pl.'s Resp. to Def.'s Motion ("Reply") at 000888-894.)

[37] (Arb. Brief, J.A. 000728-29, 000732, 000734-000736; Reply, J.A. 000883-888.)

[38] (Pl.'s Resp. to Def.'s Mt. to Dismiss Claims of Opt-ins to Conditionally Certified FLSA Action and to Compel Arb. ("Pl.'s Resp."), J.A. at 000853-862.)

[39] (Reply, J.A. 000883-886.) In its Reply, Defendant explained that it filed its Motion to compel arbitration on October 31, 2016, after the first putative party to the lawsuit who had signed an arbitration agreement filed a Consent to Join (and after attempting to confirm the identity of such Opt-ins who signed arbitration agreements through discovery). *See id.* at 000883-886. Defendant indicated that it previously put this Court and the parties on notice of its potential defense against liability for any future opt-ins by claiming it had arbitration agreements in its Response in Opposition to Motion to Certify Class (D.E. 81 at 2), filed on January 19, 2015. (Reply, J.A. at 000885-886.) The Club also contended that the timing of its Motion did not prejudice Plaintiff (who never had an arbitration agreement) or Opt-ins who signed Agreements (since they did not file their Consents to Join for almost eleven months after Defendant gave notice of the arbitration agreements).   (Reply, J.A. at 000886-888.)

any form of abusive, misleading, or coercive communication with Entertainers that would preclude the enforcement of such agreements.[40]

On January 26, 2017, the Court denied Defendant's Motion to Dismiss the Claims of Opt-Ins and Compel Arbitration, not because Defendant had waived such right (or violated the NLRA or failed to construct a valid agreement under state contract law principles) but because the district court "exercise[d] its discretion to correct the effects of Defendant's misleading unilateral communications with potential plaintiffs."[41] Specifically, the District Court indicated that it based its ruling denying Defendant's motion to compel arbitration on "the Agreement's misleading language implying that the entertainers' legal status ha[d] been decided and that it [wa]s necessarily more beneficial for them to be considered independent contractors." [42] However, the District Court pointed to no misleading communications implied or otherwise regarding the dispute resolution agreement itself or the information about arbitration accompanying it.

## SUMMARY OF THE ARGUMENT

As explained further in the Argument section below, the District Court

---

[40] (Def.'s Reply J.A. 000888-894.)

[41] (Order, J.A. at 911.) While the Court refused to enforce such Agreements because it perceived them to qualify as "misleading communications" that gave it authority to refuse to enforce them as a corrective measure under its case management authority, the Court made no finding based on state contract law that the arbitration provision was unconscionable under state law or a product of fraud or duress such that it could refuse to enforce arbitration pursuant to state contract law.

[42] (Order, J.A. at 911.)

committed error by denying Defendant's motion to compel arbitration. Therefore, this Court should evaluate the evidence that was before the District Court de novo and find that the arbitration agreements were not misleading and should be enforced.

First, the Court erred in determining that the arbitration provision was misleading by relying on sections of the Licensing Lease and Dispute Resolution Agreements ("Lease Agreement" or "Agreement") that were unrelated to arbitration, instead of the arbitration provision itself, to determine whether the arbitration clause was enforceable. Additionally, the Court only relied upon a small set of facts in the Lease Agreement in concluding that the arbitration provision was misleading due to allegedly implying that the Entertainer's status as independent contractors had been decided and that it was more beneficial for them to be classified as independent contractors. However, contrary to the Court's finding, an examination of the arbitration agreement and Entertainer's Information Package indicates that Defendant did not indicate that the Entertainers' status had been decided as a matter of law. The Agreement indicated the reality of the Entertainers being categorized as non-employees/independent contractors, such as that they would not be paid by the Club and would have to furnish leasing fees, their own costumes and equipment, and own insurance. This was merely a statement of the relationship being offered by the Club, which had long been their way of doing business.

14

Secondly, the District Court erred in applying the wrong legal standard when it refused to enforce such arbitration agreements as a corrective measure under its case management authority because it perceived them to be "misleading communications." Although the District Court relied on the non-binding Eleventh Circuit case of *Billingsley*, the facts of that case are very different from the issues at hand. For instance, the *Billingsley* Court found that the defendant was precluded from enforcing an agreement because it misled potential opt-ins by insinuating that the agreement did not pertain to a pending lawsuit and by failing to provide an opportunity to read and reflect on the arbitration waiver or consult with an attorney prior to signing the agreement within a short period of time. Contrary to the facts in the *Billingsley* case, however, in the instant case the Opt-ins who signed Agreements were informed of Ms. Degidio's pending lawsuit, provided information indicating that signing the Agreement would preclude them from joining her lawsuit, provided an opportunity to review the documents and consult an attorney before signing, and provided the opportunity to opt-out of the arbitration agreements. Thus, even under the *Billingsley* standard, the agreements to arbitrate disputes were not misleading or coercive; thus, the District Court should not have issued an Order denying the motion under the relevant standard.

ARGUMENT

15

I.    The Arbitration Agreements Were Not Misleading

First, the District Court erred because it determined that the arbitration provision in the Licensing Lease and Dispute Resolution Agreement ("Lease Agreement" or "Agreement") should not be enforced because it constituted a misleading communication with potential opt-ins, a conclusion which the Court based on the language in a small section of the Lease Agreement that was separate and apart from the arbitration clause (or the accompanying Entertainer's Information Package that explained about the arbitration provision and process).[43] For instance, the District Court indicated that it denied Defendant's motion to compel arbitration because "the Agreement's misleading language impl[ied] that the entertainers' legal status ha[d] been decided and that it [wa]s necessarily more beneficial for them to be considered independent contractors." [44] Although Defendant disputes that inaccurate representation of the language in its Agreement, notably, the District Court pointed to no misleading communications implied or otherwise regarding the arbitration clause itself or the information accompanying

---

[43] (Order, J.A. at 000911 (citing Miller's Arb. Agreement and Informational Package, 147-2 at 4); *see also* Arbitration Clause ¶ 15, J.A. at 000741, 000753, 000765, 000777, 000789, 000801, 000814, 000826, 000839) (emphasis added); Entertainer's Information Package, J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.)

[44] (Order, J.A. at 000911 (citing Arb. Agreement and Inform. Package, 147-2 at 4).)

16

it.[45]

Indeed, the very facts on which the District Court relied in determining that the arbitration provision should not be enforced were not contained in the arbitration clause but were instead located in a completely separate section of the Lease Agreement.[46] Thus, the Court turned its attention to whether the Lease Agreement between the parties was valid instead of focusing on the initial issue to be resolved – which was whether the *arbitration clause itself* was enforceable as a method by which to resolve disputes arising from the Lease Agreement with Entertainers, including whether their status or relationship to the Club was properly characterized as non-employees/independent contractors. (*See* Order, J.A. at 218 ("Accordingly, because the arbitration agreements constituted improper communications between Defendant and the putative class members during litigation, the Court exercises its managerial powers and refuses to enforce these agreements.") Even the *Billingsley* opinion on which the Court relied[47] implied that district courts have the "authority to prevent abuse and to enter appropriate orders governing the conduct of counsel

---

[45] (Order, J.A. at 000903-913.) It should be noted that although the Court denied Defendant's summary judgment motion on the issue of whether the Entertainers were independent contractors, Plaintiff did not move for summary judgment herself, and so the issue remains one awaiting trial.

[46] (Order, J.A. at 000911 (citing Kenya Miller's Arbitration Agreement and Informational Package, 147-2 at 4); J.A. at 000739, 000751, 000763, 000775, 000788, 000800, 000812, 000824, 000837. Similarly, though the Court also alluded to declarations that the Club obtained from Entertainers as reinforcing its notion that the Agreements were misleading, those declarations did not reference the arbitration provision. (Order, J.A. at 000909-910; Decls. of Entertainers, J.A. 000085-96.)

[47] (Order, J.A. at 000911.)

and the parties" if *arbitration agreements* are "misleading, coercive, and clearly designed to thwart unfairly the right of [potential opt-ins] to participate in [an] FLSA collective action." *Billingsley v. Citi Trends, Inc*., 560 F. Appx. 914, 922 (11th Cir. 2014).[48]

Even if the District Court properly relied on other sections of the Lease Agreement to determine whether the arbitration clause itself was enforceable, the Court erred by examining and relying on only a small set of statements in the Lease Agreement (instead of viewing the Agreement and its related Entertainer's Packet as a method by which the Club was attempting to contract as to the type of relationship it perceived the Entertainers to have with the Club as independent contractors), such that its perception of Defendant's communications with Entertainers was skewed in concluding that "the Agreement's misleading language impl[ied] that the entertainers' legal status ha[d] been decided and that it [wa]s necessarily more beneficial for them to be considered independent contractors."[49]     As the basis for that conclusion, the Court cited a small section of the Lease Agreement which stated "YOU ARE NOT AN EMPLOYEE, THE CLUB IS NOT YOUR EMPLOYER."[50]

---

[48] Where an arbitration agreement specifically indicates that an arbitrator must decide whether the arbitration agreement is enforceable, as is the case here, the issue of enforceability must be resolved by an arbitrator instead of a court, unless the plaintiff challenges the provision delegating such responsibility to the arbitrator. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010).

[49] (Order, J.A. at 911.)

[50] (Order, J.A. at 911 (citing 147-2 at 4).)

18

Note that there is nothing "misleading" about the Club's clear and unequivocal statement of the Club-Entertainer relationship being offered.[51] Note further that the Lease Agreement does not say, as the District Court implies, that a legal authority has already determined this issue.

Most importantly, however, the Court failed to even mention that the Lease Agreement was accompanied by an Entertainer's Information Package that included a section entitled "About Arbitration and Opt-out," which indicated that Plaintiff Degidio had recently filed a lawsuit against the Club contending that she and other Entertainers should have been classified as employees (not independent contractors) and that the Club disputed Plaintiff's claim.[52] Thus, that section clarified that the issue of whether Plaintiff and other Entertainers at the Club were employees or independent contractors had <u>NOT</u> been decided yet by the Court.   Further, when the Court ruled against Defendant's motion to compel arbitration on the basis that such Agreements were misleading due to implications that Entertainers were properly

---

[51]  Additionally, while the Court concluded the Agreement implied that a classification as an independent contractor was more beneficial, the Agreements actually indicated that, as independent contractors, Entertainers would not be paid by the Club while furnishing their own clothing, makeup, hair, props, rental fees, insurance, licenses, and permits. Therefore, the Agreement also emphasized circumstances that were less beneficial than if she was an employee. (Agreement, J.A. at 000739-740, 000751-752, 000763-764, 000775-776, 000788-789, 000800-801, 000812-813, 000824-825, 000837-838; Order, J.A. at 911.)

[52]  (Entertainer's Inform. Package About Arb., J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.)

classified as independent contractors, the Court had not definitively ruled on the issue of whether Plaintiff was an "employee" under the FLSA and/or the SCPWA.[53] Defendant's characterization of its position that Entertainers were not employees was just that – a statement of the Club's position as to the relationship being offered to Entertainers.  As the Club contended, it was not attempting to give the Entertainers legal advice but rather to contract by defining the nature of their relationship as that of non-employee/independent contractors (i.e., Licensor/Lessor and Licensee/Lessee) based on factors which the Club considered indicative of that type of business relationship.[54]  Thus, there was no language in the Agreement and information package that was misleading.

Since the District Court focused on the Lease Agreement instead of the actual arbitration clause to determine if it was misleading (or in the alternative, if it did properly consider the entire agreement as opposed to only the arbitration clause itself, only reviewed a portion of the evidence before it to conclude that the

---

[53] Although the Court denied Defendant's summary judgment motion on that issue, Plaintiff did not move for summary judgment, and thus the issue will be decided by the jury.

[54] (Reply, J.A. at 889-890; Agreement, J.A. at 000739-740, 000751-752, 000763-764, 000775-776, 000788-789, 000800-801, 000812-813, 000824-825, 000837-838; Order, J.A. at 911.) ("[t]he Club is willing to provide Performer by way of Lease, access to its premises so that Performer may perform as an independent contractor, and not as an employee;" "[t]he Club and Performer each acknowledge and agree that the relationship of the parties hereto is that of The Club as "Licensor" and "Lessor" and the Performer is an independent Performer Licensee and Temporary Space Lessee and is not an employee of the Club."); Order, J.A. at 911).

Arbitration Agreement constituted a "misleading" communications with potential opt-ins), the District Court's denial of Defendant's motion to compel arbitration should be reversed.

II.    Case Law Does Not Support the Court's Denial of Defendant's Motion to Compel Arbitration To Prevent Misleading Communications

The District Court's refusal to enforce the Club's arbitration agreements is not supported by either Fourth Circuit law or the non-binding law upon which the Court relied, if the whole picture is viewed (as explained above) instead of only the nominal facts highlighted in the Court's Opinion. The Court cited four non-binding cases from other jurisdictions (but no Fourth Circuit law) which purportedly authorized it to refuse to enforce the arbitration agreements on the grounds that they were misleading. (*See* Order, J.A. at 216 (citing *Billingsley v. Citi Trends, Inc.*, 560 F. Appx. 914, 921 (11th Cir. 2014); *Espinoza v. Galardi South Enterprises, Inc.*, No. 14-21244, 2015 WL 9592535, at *3 (S.D. Fla. Dec. 31, 2015); *Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609 and 10-cv-2671, 2012 WL 760566, at *1-2, 4 (S.D. Ca. Mar. 8, 2012); and *Williams v. Securitas Security Services USA, Inc.*, No. 10-7181, 2011 WL 2713741, at *3 (E.D. Penn. July 13, 2011).[55] However, none of

---

[55] *See* Eleventh Circuit Rules 36-2 and 36-3. The Court did not cite and Defendant has not found any Fourth Circuit (or South Carolina) authority permitting the Court to deny enforcement of the arbitration agreements as misleading unilateral communications under the facts at issue. In fact, Defendant contends that the District Court applied the wrong standard; instead of precluding use of the arbitration provisions by labeling them as "misleading unilateral communications," the Court may have used South Carolina contract law to determine if the arbitration provision was unconscionable or coerced, although it did not do so. *See, e.g., Rota-McLarty v.*

those cases upon which the Court relied indicate that the arbitration agreements at issue qualified as misleading communications that were prohibited or that the Court could properly refuse to enforce them as a corrective measure under its case management authority.

For instance, facts of the non-binding Eleventh Circuit case of *Billingsley v. Citi Trends, Inc.*, upon which the Court heavily relied in refusing to enforce the arbitration agreements, are inapposite to the facts in the instant case. The *Billingsley* Court found that Opt-ins' arbitration agreements should not be enforced because they were coerced due to their failure to inform of the opt-ins of the pending lawsuit which the agreements were intended to prevent them from joining, as well as a lack of an opportunity to review the documents, consult with an attorney before signing, and opt-out of the arbitration agreements.[56]  However, in this case, the Opt-ins were each provided the opportunity to consult an attorney, review the arbitration agreement further, review information about arbitration and opt-ing out, fill out an opt-out form, review information about Ms. Degidio's pending lawsuit (including that signing the Agreement would preclude them from joining her lawsuit and other lawsuits brought thereafter). Thus, Defendant's arbitration provisions were not misleading under the *Billingsley* standard, and the District Court should not have issued an Order denying Defendant's Motion to Compel based on that case.

---

*Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012) (court erred by applying the wrong law and incorrect standard because "the principle of "default" is akin to waiver, but not identical.")

[56] *Billingsley v. Citi Trends*, 560 Fed. Appx. 914, 918-19, 922-24 (11th Cir. 2014).

The second opinion that the District Court relied on in refusing to enforce the Agreements was the non-binding Florida district court decision of *Espinoza*. *See Espinoza v. Galardi South Enterprises, Inc*., No. 14-21244, 2015 WL 9592535, at *5-6 (S.D. Fla. Dec. 31, 2015). The *Espinoza* court refused to enforce arbitration agreements because dancers were not permitted to perform at a club unless they signed the arbitration agreement, and the opinion mentioned no method by which those plaintiffs could opt-out of the arbitration agreement. *See id*. However, contrary to the facts in *Espinoza*, Defendant supplied information to Entertainers clearly indicating that they could opt-out of arbitration if they so desired.[57]

Third, the Court relied on a California district court's decision *Balasanyan*, which invalidated arbitration agreements that were obtained by an employer because it failed to "alert putative class members of the litigation" and those who were bound by it had no opportunity to opt out of it. *Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609 and 10-cv-2671, 2012 WL 760566, at *3-4 (S.D. Ca. Mar. 8, 2012) ("To allow defendants to induce putative class members into forfeiting their rights by making them an offer and failing to disclose the existence of litigation would create an incentive to engage in misleading behavior"). However, here, unlike in the

---

[57] (Entertainer's Inform. Package About Arb., J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.) ("What if I do not want to arbitrate? You have 21 days from the date of this memorandum to opt out of the Dispute Resolution Agreement. You may do so by signing and returning the attached Opt-out Form . . . .").

*Balasanyan* case, the informational package supplied with the arbitration provision clearly revealed that Plaintiff's litigation was pending against the Defendant related to the misclassification of Entertainers who performed at its Club and contained an Opt-out form and instructions on how to opt-out of the Agreement.[58]

Lastly, the Pennsylvania *Williams* decision on which the Court relied, may be differentiated from the present case because that arbitration agreement did "not require an employee to sign the document before it [became] effective," was not easily comprehensible, offered an opt-out procedure that was deeply embedded in the document that the employee would probably not read (since she did not have to sign the agreement), and only relayed the name of a pending lawsuit without explaining the nature of the action. *Williams v. Securitas Security Services USA, Inc.*, No. 10-7181, 2011 WL 2713741, at *3 (E.D. Penn. July 13, 2011). However, here, the arbitration agreements required each Entertainer to sign the agreement before being bound, offered an opt-out procedure that was clearly outlined on the first page of the informational package's "About Arbitration and Opt-out" section (which each Entertainer was required to initial in addition to signing the Licensing, Lease, and Dispute Resolution Agreement), and explained the nature of the lawsuit against the Club that was filed by Plaintiff for misclassification as an independent

---

[58] (Entertainer's Inform. Package About Arb., J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.)

contractor and for minimum wage, overtime, and tips due.[59]

Therefore, the cases upon which the District Court relied did not support its ruling that the arbitration agreements should not be enforced; on the contrary, they were not misleading according to any of those cases based on the facts as outlined above.

In fact, Defendant argued to the District Court that its motion to compel arbitration should be granted because, in contesting it, Plaintiff had not submitted any evidence indicating that the Club misled potential opt-ins in obtaining the arbitration agreements at issue or any non-binding case law indicating that the arbitration agreements should not be enforced because they were misleading.[60] Defendant contended that the evidence in the record only indicated that: (1) Plaintiff only speculated that the agreements (along with declarations obtained from Entertainers who wishes to continue their relationship as independent contractors) were misleading because Defendant (which Plaintiff alleges was her "employer," which the Club disputes) obtained them during the case while Plaintiff failed to cite

---

[59] (Agreements and Entertainer's Information Package, J.A. at 000738-847.)

[60] The Club contended Plaintiff did not provide evidence (under the *Billingsley* or *Gulf Oil* standard) establishing that it engaged in any improper, abusive, coercive, or misleading communications with Entertainers that would preclude the enforcement of such arbitration agreements. (Reply, J.A. at 000888-894 *(citing Billingsley v. Citi Trends*, 560 Fed.Appx. 914, 918-19, 922-24 (11th Cir. 2014); *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981).)

to any part of the arbitration agreements that was misleading;[61] (2) no Entertainers who had signed arbitration agreements (or declarations that they desired to remain classified as independent contractors) filed any affidavits or declarations objecting to the agreements as misleading or indicating that the Club coerced them to sign against their will or under the coercive conditions indicated in *Billingsley* (where plaintiffs were forced into a room with human resources personnel, never given an opportunity to obtain counsel, and forced to sign immediately);[62] (3) Defendant sought the arbitration agreements during the pre-conditional certification stage as it was permitted to do;[63] and (4) the Agreements (which included the arbitration provisions, opt-out forms, and explanatory memoranda) were not coercive or misleading because they indicated that each Entertainer could review the agreement with her attorney before signing, that she could opt-out of the arbitration provision within twenty-one days, that a lawsuit was currently pending wherein Plaintiff

---

[61] (Pl.'s Resp., J.A. at 000853-858; Reply, J.A. at 000888-891.)

[62] (Reply, J.A. at 000888-891.) *See Billingsley v. Citi Trends*, 560 Fed. Appx. 914, 918-19, 922-24 (11th Cir. 2014). In fact, some Entertainers signed declarations indicating that their statements about their own economic circumstances and observations were made voluntarily, that the Club explained that their declaration would be used to defend against Plaintiff's lawsuit (wherein she claimed the Entertainers should be paid as employees and not trea ted as independent contractors), that they were free to decline the interview with no negative consequences, and that they would be given nothing of value for executing the declarations. (Decls. of Entertainers, J.A. at 000085-96.)

[63] Defendant only obtained arbitration agreements during the pre-conditional certification stage (i.e., prior to the Court granting conditional certification on September 30, 2015). (Reply, J.A. at 891.)

alleged the Club had misclassified her as an independent contractor, and that the Club would not tolerate retaliation against those who opted out.[64]

As Defendant argued, even under the case law cited by the District Court in support of its refusal to enforce arbitration, the Club's communication with Entertainers who had not opted into the case in order to obtain arbitration agreements (and related declarations) prior to the Court granting conditional certification was not misleading or coercive.[65] *See e.g., Slavinski v. Columbia Ass'n, Inc.*, No. CCB-8-890, 2011 WL 1310256, at *2-4 (D.Md. Mar. 30, 2011) (employer's unilateral communications with putative opt-ins, who had not joined suit, by obtaining declarations prior to grant of conditional certification were not misleading where defendant had made the employees aware of the existence and nature of the lawsuit, in contrast to the *Longcrier* case, where an employer's attempt to obtain declarations from putative opt-in employees was found to be misleading because it claimed the declarations were just for a survey and failed to disclose the lawsuit's existence or that the declarations might interfere with employees joining

---

[64] Reply, J.A. at 000894; Entertainer's Inform. Package About Arb., J.A. at 000744-748, 000756-760, 000768-772, 000780-784, 000793-797, 000805-809, 000817-821, 000829-833, 000842-846.)

[65] (Reply, J.A. 000892-894.) As the District Court seemed to acknowledge, even if the Club were the Entertainers' employer, which is strongly disputed, the mere fact that Plaintiff alleged there was an employer-employee relationship between Defendant and Entertainers did not in and of itself establish any coercion by Defendant. (Order, J.A. at 911.)

the suit) (*citing Longcrier v. HLA Co., Inc*. 595 F.Supp.2d 1218, 1226-27 (S.D. Ala. 2008); *Stevenson v. Great American Dream, Inc.*, 2014 WL 3519184, at *1 (N.D. Ga. 2014) (arbitration agreement club obtained from putative FLSA collective members in pre-certification stage was valid and not improper ex parte communication); *Ross v. Wolf Fire Protection*, 799 F.Supp.2d 518 (D. Md. 2011) (FLSA defendants could properly solicit affidavits ex parte from putative opt-in employees pertaining to FLSA suit) (*citing Longcrier,* 595 F.Supp. at 1229 n. 15).

Since Defendant established that the agreements to arbitrate were not misleading or coerced under the *Billingsley* standard, the District Court must enforce those arbitration agreements, resolving any doubt in favor of arbitration.[66] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) (FAA has established a strong federal policy "that, as a matter of federal law, any

---

[66] No South Carolina contract formation challenges were presented by Plaintiff; therefore, Defendant contends that any such challenges (for example, unconscionability) were waived. Additionally, the Court made no finding that the parties did not "agree[] to arbitrate a particular dispute" . . . [which] is a question of state law governing contract formation," nor did it find there was a waiver due to delay, prejudice, or that the agreement violated the NLRA. *See Adkins v. Labor Ready, Inc*. 303 F.3d 496, 501 (2002). Therefore, the "district court . . . ha[d] no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id*. at 500. Even if there had been a challenge to contract formation, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Arbitration] Act, due regard must [have] be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998) (citing *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 475-76 (1989).

28

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *see also Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("[a] district court [] has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview"); *Hightower v. GMRI, Inc.,* 272 F.3rd 239, 241 (4th Cir. 2001) (a court may not disregard valid arbitration agreement; rather, since "FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists"); 9 U.S.C. § 1 *et seq*.

## CONCLUSION

For the foregoing reasons, the District Court's denial of Defendant's Motion to Dismiss the Claims of Opt-Ins and Compel Arbitration should be reversed due to clearly erroneous findings of fact and an incorrect legal determination, which must be reviewed de novo.   Defendant's arbitration agreements are valid and enforceable under the law of this jurisdiction because they were not misleading, "unconscionable," or secured through fraud or coercion.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellant and the Addendum thereto was filed by electronic means in compliance with F.R.A.P. 25(c)(1)(D), using this Court's Electronic Case Files (ECF) system, on this 7th day of April, 2017, which will automatically serve all counsel of record on the Service List below.

/s/James L. Holt
James L Holt, Jr.
Tennessee Bar No. 012123

SERVICE LIST

Jamisen A Etzel
Carlson Lynch
Attorneys for Appellee
CARLSON LYNCH SWEET
KILPEA & CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
412-322-9243
Fax: 412-231-0246
Email: jetzel@carlsonlynch.com
Email: glynch@carlsonlynch.com

# ADDENDUM (STATUTES AND RULES)

## FRAP 36. Entry of Judgment; Notice

(a) Entry. A judgment is entered when it is noted on the docket. The clerk must prepare, sign, and enter the judgment:

(1) after receiving the court's opinion—but if settlement of the judgment's form is required, after final settlement; or

(2) if a judgment is rendered without an opinion, as the court instructs.

(b) Notice. On the date when judgment is entered, the clerk must serve on all parties a copy of the opinion—or the judgment, if no opinion was written—and a notice of the date when the judgment was entered.

(As amended Apr. 24, 1998, eff. Dec. 1, 1998; Apr. 29, 2002, eff. Dec. 1, 2002.)

* * * *

11th Cir. R. 36-1 [Rescinded]

11th Cir. R. 36-2 Unpublished Opinions. An opinion shall be unpublished unless a majority of the panel decides to publish it. Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority. If the text of an unpublished opinion is not available on the internet, a copy of the unpublished opinion must be attached to or incorporated within the brief, petition, motion or response in which such citation is made. But see I.O.P. 7, Citation to Unpublished Opinions by the Court, following this rule.

11th Cir. R. 36-3 Publishing Unpublished Opinions. At any time before the mandate has issued, the panel, on its own motion or upon the motion of a party, may by unanimous vote order a previously unpublished opinion to be published. The timely filing of a motion to publish shall stay issuance of the mandate until disposition thereof unless otherwise ordered by the court. The time for issuance of the mandate and for filing a petition for rehearing or petition for rehearing en banc shall begin running anew from the date of any order directing publication.

* * * *

I.O.P. -

1. Motion to Amend, Correct, or Settle the Judgment. These motions are referred to the panel members.

2. Effect of Mandate on Precedential Value of Opinion. Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result. See Martin v. Singletary, 965 F.2d 944, 945 n.1 (11th Cir. 1992). For information concerning the precedential value of opinions of the former Fifth Circuit, see Bonner v. City of Prichard, Alabama, 661 F.2d 1206 (11th Cir. 1981) (en banc) and Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).

Rev.: 12/10

150

FRAP 36

3. *Processing of Opinions.* After the draft opinion has been prepared, the opinion writing judge circulates the proposed opinion to each of the other two judges on the panel. Review of another judge's proposed opinion is given high priority by the other members of the panel. When the writing judge has received concurrences from the other judges or in the case of dissent, or special concurrences, sufficient concurrence(s) to constitute a majority, the writing judge then sends the opinion to the clerk, along with the concurrences, dissent, or special concurrence, as the case may be.

4. *Circulation of Opinions to Non-Panel Members.* Copies of proposed opinions are not normally circulated to non-panel members. In special cases, however, a panel or member thereof may circulate a proposed opinion to other members of the court.

5. *Publication of Opinions.* The policy of the court is: The unlimited proliferation of published opinions is undesirable because it tends to impair the development of the cohesive body of law. To meet this serious problem it is declared to be the basic policy of this court to exercise imaginative and innovative resourcefulness in fashioning new methods to increase judicial efficiency and reduce the volume of published opinions. Judges of this court will exercise appropriate discipline to reduce the length of opinions by the use of those techniques which result in brevity without sacrifice of quality.

6. *Unpublished Opinions.* A majority of the panel determine whether an opinion should be published. Opinions that the panel believes to have no precedential value are not published. Although unpublished opinions may be cited as persuasive authority, they are not considered binding precedent. The court will not give the unpublished opinion of another circuit more weight than the decision is to be given in that circuit under its own rules. Parties may request publication of an unpublished opinion by filing a motion to that effect in compliance with FRAP 27 and the corresponding circuit rules.

7. *Citation to Unpublished Opinions by the Court.* The court generally does not cite to its "unpublished" opinions because they are not binding precedent. The court may cite to them where they are specifically relevant to determine whether the predicates for res judicata, collateral estoppel, or double jeopardy exist in the case, to ascertain the law of the case, or to establish the procedural history or facts of the case.

8. *Release of Opinions.* Prior to issuance of an opinion, information concerning the date a decision by the court may be expected is not available to counsel.

Opinions are generally released from the clerk's office in Atlanta. Upon release of an opinion, a copy is mailed to counsel and made available to the press and public at the clerk's office and at the circuit libraries. On request, the clerk will also notify counsel by telephone. Opinions are available on the Internet at www.ca11.uscourts.gov.

Opinions are subject to typographical and printing errors. Cooperation of the bar in calling apparent errors to the attention of the clerk's office is solicited.

Rev.: 12/10

151

FRAP 36

9. *Citation to Internet Materials in an Opinion*. When an opinion of the court includes a citation to materials available on a website, the writing judge will send a copy of the cited internet materials to the clerk for placement on the docket.

Cross-Reference:  FRAP 28, 32.1, 41

Rev.: 4/16

152

FRAP 36

34

§ 201. Short title, 29 USCA § 201

United States Code Annotated
Title 29. Labor
Chapter 8. Fair Labor Standards (Refs & Annos)

29 U.S.C.A. § 201

§ 201. Short title

Currentness

This chapter may be cited as the "Fair Labor Standards Act of 1938".

**CREDIT(S)**

(June 25, 1938, c. 676, § 1, 52 Stat. 1060.)

Notes of Decisions (251)

29 U.S.C.A. § 201, 29 USCA § 201
Current through P.L. 114-327. Also includes P.L. 114-329 and 115-1 to 115-8. Title 26 current through 115-8.

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

§ 1. "Maritime transactions" and "commerce" defined; exceptions to..., 9 USCA § 1

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 9. Arbitration (Refs & Annos)
    Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 1

§ 1. "Maritime transactions" and "commerce" defined; exceptions to operation of title

Currentness

"Maritime transactions", as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

**CREDIT(S)**
  (July 30, 1947, c. 392, 61 Stat. 670.)

Notes of Decisions (271)

9 U.S.C.A. § 1, 9 USCA § 1
Current through P.L. 114-327. Also includes P.L. 114-329 and 115-1 to 115-8. Title 26 current through 115-8.

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
Title 9. Arbitration (Refs & Annos)
Chapter 1. General Provisions (Refs & Annos)

9 U.S.C.A. § 16

§ 16. Appeals

Currentness

(a) An appeal may be taken from--

(1) an order--

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award;

(2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

(3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order--

(1) granting a stay of any action under section 3 of this title;

(2) directing arbitration to proceed under section 4 of this title;

(3) compelling arbitration under section 206 of this title; or

(4) refusing to enjoin an arbitration that is subject to this title.

§ 16. Appeals, 9 USCA § 16

**CREDIT(S)**

(Added Pub.L. 100-702, Title X, § 1019(a), Nov. 19, 1988, 102 Stat. 4670, § 15; renumbered Pub.L. 101-650, Title III, § 325(a)(1), Dec. 1, 1990, Stat. 5120.)

Notes of Decisions (208)

9 U.S.C.A. § 16, 9 USCA § 16
Current through P.L. 114-327. Also includes P.L. 114-329 and 115-1 to 115-8. Title 26 current through 115-8.

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

§ 1331. Federal question, 28 USCA § 1331

United States Code Annotated
  Title 28. Judiciary and Judicial Procedure (Refs & Annos)
    Part IV. Jurisdiction and Venue (Refs & Annos)
      Chapter 85. District Courts; Jurisdiction (Refs & Annos)

28 U.S.C.A. § 1331

§ 1331. Federal question

Currentness

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

CREDIT(S)

(June 25, 1948, c. 646, 62 Stat. 930; July 25, 1958, Pub.L. 85-554, § 1, 72 Stat. 415; Oct. 21, 1976, Pub.L. 94-574, § 2, 90 Stat. 2721; Dec. 1, 1980, Pub.L. 96-486, § 2(a), 94 Stat. 2369.)

Notes of Decisions (3059)

28 U.S.C.A. § 1331, 28 USCA § 1331
Current through P.L. 114-327. Also includes P.L. 114-329 and 115-1 to 115-8. Title 26 current through 115-8.

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

No. <u>17-1145</u>     Caption: <u>Degidio v. Crazy Horse Saloon & Rest., Inc. (Appellant)</u>

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. <u>See</u> Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains _____5352_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> [*identify word processing program*] in <u>Times New Roman 14 font size</u> [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>James L. Holt, Jr.</u>

Party Name <u>Crazy Horse Saloon & Rest., Inc.</u>

Dated: <u>4/7/17</u>